IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SHIRLEY ANNE McCULLEY,<br><br>　　　　　　　　　Petitioner<br><br>　　VS.<br><br>GUY HICKMAN, Warden,<br><br>　　　　　　　　　Respondent | NO. 5:05-CV-241 (WDO)<br><br>PROCEEDINGS UNDER 28 U.S.C. §2254<br>BEFORE THE U.S. MAGISTRATE JUDGE |

## RECOMMENDATION

Petitioner SHIRLEY ANNE MCCULLEY has filed a petition seeking federal habeas corpus relief. Tab #1. She has sued GUY HICKMAN, Warden of Pulaski State Prison in Hawkinsville, Georgia, alleging numerous grounds in support of her contention. Respondent HICKMAN has filed an answer/response to the petitioner's petition. Tab #9. After careful consideration, the undersigned recommends that the petitioner's petition be **DENIED**.

### I. Procedural History

On August 1, 1997, petitioner and a co-defendant were indicted by a Houston County grand jury for malice murder, aggravated assault, and possession of a firearm during the commission of a felony. On December 6, 1997, following a jury trial, petitioner was found guilty on all counts. She was sentenced to life imprisonment for malice murder, a consecutive ten year sentence for aggravated assault, and a consecutive five year sentence for possession of a firearm during the commission of a felony.

Petitioner appealed her conviction to the Georgia Supreme Court. Her convictions were affirmed on direct appeal. However, her case was remanded back to the trial court to consider the question of ineffective assistance of counsel. *McCulley v. State*, 273 Ga. 40 (2000).[1]

---

[1] In its decision the Georgia Supreme Court noted that:

> Shirley Ann McCulley was convicted by a jury of malice murder in the shooting death of Clifford Jarreau, aggravated assault on Jarreau's brother, Brian Glasper, and possession of a firearm during the commission of a crime. She appeals from the judgment of conviction and sentence entered thereon. Finding no error, we affirm. But because the trial court was without jurisdiction to consider and resolve the issue of ineffective assistance of trial counsel, we remand for that purpose.
>
> Previously, McCulley and Jarreau had been in a tumultuous relationship which ended acrimoniously. On the night of the shooting, Jarreau and McCulley arranged to meet at a shopping center in order for Jarreau to transfer title to a vehicle to McCulley in exchange for cash for a bus ticket out of town. When they met, McCulley handed Jarreau a check instead, which he refused to accept. Jarreau returned home. Minutes later, McCulley and her current boyfriend, Leonard "Sonny" Newell, drove to Jarreau's residence. McCulley exited the car holding a gun; Jarreau came out of the house; and McCulley fired one shot into his leg.
>
> Glasper came outside and saw Jarreau on the ground and McCulley standing several feet away holding a gun. Jarreau stated, "Shirley has shot me, call 911." As Glasper approached, McCulley pointed the gun at him and ordered him to get back in the house. Glasper retreated into the house to call 911. Two more shots were fired: one was a close range, defensive wound to Jarreau's wrist as he held a hand in front of his face, and the third and fatal bullet entered the top of Jarreau's head. A neighbor confirmed a lapse of two to three minutes between the first shot and the two final shots. The medical examiner testified that the first shot to Jarreau's leg would have incapacitated him to the extent that he would have been unable to move.
>
> McCulley and Newell drove directly from the scene to the home of a friend, Charles McIntosh. McCulley told McIntosh that she had shot Jarreau and thought she had killed him and she showed McIntosh three spent shell casings from her gun. At McIntosh's urging, McCulley surrendered to the police where she volunteered: "I shot and killed my boyfriend." After receiving *Miranda* warnings McCulley told police that she shot Jarreau at least twice at close range, but that she did so in self-defense because he and Glasper had threatened to kill her. Newell was also interviewed by police on the night of the shootings; he confirmed that McCulley had fired all three shots. Newell was subsequently indicted as a co-defendant along with McCulley.
>
> *McCulley*, 273 Ga. at 40-41

2

After considering the ineffective assistance of counsel claims, the trial court denied relief. This determination was upheld on appeal. *McCulley v. State*, 275 Ga. 473 (2002). On July 28, 2003, petitioner filed a habeas petition in the Superior Court of Puliaski County. On November 23, 2004, petitioner's state habeas corpus petition was denied. The petition at bar was filed on July 9, 2005. Since the petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), it will be reviewed pursuant to the standards of the Act.

## II. Need for an Evidentiary Hearing

Under the AEDPA, if the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that: (A) the claim relies on: (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

---

> In his interview with police on the night of the shooting, Newell confirmed that McCulley had fired all three shots. Newell was subsequently indicted as a co-defendant along with McCulley. However, six weeks after the shooting, Newell committed suicide. In his pocket were found two unmailed stamped letters; one was addressed to McCulley and the other to an investigator in the case. In the letter to the investigator, Newell claimed that he rather than McCulley fired the final two shots. In the letter to McCulley, Newell said that he was confessing guilt to the investigator because McCulley had "too much on the outside to be locked [up]" for the crimes. Allegedly, at some point, Newell also told his mother that he was guilty. McCulley sought to introduce into evidence at trial the two letters and purported oral admission; however, the trial court properly disallowed the hearsay evidence. McCulley testified at trial and her defense was justification in support of which she offered evidence of battered person syndrome.
>
> *McCulley*, 275 Ga. 474-75

3

After a review of the file, the undersigned finds that an evidentiary hearing is not warranted in this case.

### III. Legal Standards
### A. Factual Presumption of Correctness

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### IV. Discussion
### 1.  Procedurally Defaulted Claims

The Court notes that various claims asserted by the petitioner in this proceeding have been, or would now be found to be, procedurally defaulted by the state courts. Specifically, grounds two, four, five, part of ground seven, nine, ten, eleven, and thirteen, fifteen, and sixteen are procedurally defaulted.

The Supreme Court has held that when a defendant is barred from raising a federal constitutional claim in the state courts because of his failure to follow the state's procedural rules, he is also barred from raising the claim in his federal habeas petition absent a showing of cause for, and actual prejudice from, the procedural default. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

The Supreme Court has declined to essay a comprehensive list of circumstances that would justify a finding of cause. *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 434 (1986). However, the Court has made it clear that the existence of cause for a procedural default must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).

In other words, cause requires a showing of some external impediment preventing counsel from constructing or raising the claim. *McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 1472, 113 L.Ed.2d 517 (1991). For cause to exist, the external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented the petitioner from raising the claim. *Murray v. Carrier*, 106 S.Ct. at 2645.

To show prejudice, a federal habeas petitioner generally must show that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

A federal court can also consider claims that have been procedurally defaulted at the state court level if a resulting fundamental miscarriage of justice would occur if it did not consider them. *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). *See also Aldridge v. Dugger*, 925 F.2d 1320, 1327 (11th Cir. 1991). A fundamental miscarriage of justice has occurred when a court finds that a constitutional violation has probably resulted in the conviction of someone actually innocent. *Murray v. Carrier*, 106 S.Ct. at 2649.

After thoroughly reviewing her arguments (Tabs #12, #13, and #18), the undersigned concludes that the petitioner has not demonstrated cause and prejudice to excuse her procedurally defaulted claims.[2]

## 2. Sufficiency Of The Evidence

In ground one, petitioner contends that her conviction is a miscarriage of justice as she is actually innocent. In ground fourteen, petitioner alleges that her guilty verdict was against the weight of the evidence. Finally, in ground seventeen, petitioner alleges that the Georgia Supreme Court relied on unreasonable findings of fact to uphold her convictions.[3]

---

[2] The undersigned is also unconvinced that the petitioner is entitled to avail himself of the fundamental miscarriage of justice exception.

[3] The undersigned agrees with the respondent that these grounds should be interpreted as sufficiency of the evidence claims.

As a federal habeas court, our review of the petitioner's conviction is limited to a consideration of whether the evidence is sufficient as a matter of federal constitutional law. *Wilcox v. Ford*, 813 F.2d 1140, 1143 (11th Cir. 1987). *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Our task in addressing such a claim on habeas review is to determine whether any rational trier of fact would have found proof of guilt beyond a reasonable doubt. In applying this test, we are required to review the evidence in the light most favorable to the prosecution.

The federal courts have consistently reiterated that this standard for weighing the constitutional sufficiency of evidence is a limited one. It is not required that the evidence rule out every hypothesis except that of guilt beyond a reasonable doubt. Faced with a record of historical facts that support conflicting inferences, we must presume that the jury resolved such conflicts in favor of the prosecution, deferring to the jury's judgment as to the weight and credibility of the evidence. The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief. *Wilcox*, 813 F.2d at 1143.

In evaluating sufficiency of the evidence under *Jackson v. Virginia*, *supra*, the Georgia Supreme Court correctly found that petitioner's convictions were supported by the evidence. *McCulley*, 273 Ga. App. at 41. In the view of the undersigned, the Georgia Supreme Court's determination of this issue is not unreasonable in light of the evidence. Accordingly, after a review of the record and the standards set forth in 28 U.S.C. § 2254(d), the undersigned finds that the petitioner is not entitled habeas relief on her sufficiency of the evidence claims.

### 3. Ineffective Assistance of Counsel

In ground three, petitioner claims that she was prevented from presenting a full and meaningful defense to the jury. In ground seven, petitioner claims that her trial counsel did not fully investigate her case.

It is well settled that a petitioner setting forth an ineffective assistance of counsel claim, must prove two separate things in order to merit habeas corpus relief. First, he must show that his counsel's performance fell below an objective standard of reasonableness. Generally, a strong presumption exists that counsel rendered adequate assistance. The courts must also be mindful that a fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight. The circumstances of the challenged conduct should also be reconstructed and the conduct evaluated from the counsel's perspective at the time.  Second, he must show that he suffered prejudice from the alleged deficiencies of his attorney. To prove prejudice, the petitioner bears a heavy burden. He must show that there is a reasonable probability that but for the enumerated errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See also Nelson v. Nagle*, 995 F.2d 1549, 1554 (11th Cir. 1993); *Waters v. Zant*, 979 F.2d 1473, 1490 (11th Cir. 1992); *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988).[4]

The Georgia Supreme Court found that petitioner's claims of ineffective assistance of counsel had no merit. *McCulley*, 275 Ga. 473.#3.  While not expressly stating so in its decision, the Georgia Supreme Court correctly applied *Strickland v. Washington*, 466 U.S. 668 (1984), as the legal standard to be applied to petitioner's claims. Further, the decision of the Georgia Supreme Court is not contrary to or an unreasonable application of United States In Supreme Court precedent.

In assessing whether petitioner's counsel was ineffective, the Georgia  Supreme Court addressed petitioner's claims that her attorney abandoned without her consent  her claims that she did not fire the fatal shots and that her co-defendant did.  The court noted that the evidence showed that trial counsel did a substantial investigation into this defense and that the trial court correctly determined that "the decision to forego that at some point in time was a strategy decision that was made only after consultation with this defendant and her acquiescence in it." *Id*. at 475.

---

[4]The *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. The petitioner must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). *See also Esslinger v. Davis*, 44 F.3d 1515 (11th Cir. 1995).

The Georgia Supreme Court also noted that the trial court ruled that two of the co-defendants letters and statements to his mother that he committed the murder were inadmissable. Therefore, petitioner's counsel was aware that petitioner's allegation that she did not fire the fatal shots was inadmissable unless the trial court reversed its ruling. *Id*. Additionally, petitioner told her counsel that she could not remember who fired the shots. The Georgia Supreme Court also pointed out that petitioner initially told the police that she fired the fatal shots. *Id*. Based on this, trial counsel felt petitioner would lose credibility with the jury if she pursued the defense that she did not fire the fatal shots. As noted by the Georgia Supreme Court, questions of trial strategy do not provide a basis for ineffective assistance of counsel claims. *Butler v. State,* 273 Ga. 380 (2001).

The Georgia Supreme Court also correctly found that petitioner's claims that her counsel was ineffective for failing to ensure that she was present at two in-chambers conferences had no merit. At the two conferences, the admissibility of the co-defendants letters and the abandonment of the defense that petitioner did not fire the fatal shots was discussed. In its opinion, the Georgia Supreme Court correctly found that the first conference dealt with the issue of jury charges. Under Georgia law, a defendant does not have unequivocal right to be present at a charge conference. *Huff v. State*, 274 Ga. 110 (2001). As to the second conference, where the abandonment of the defense that petitioner did not fire the fatal shots was discussed, the Georgia Supreme Court correctly pointed out that this was a decision made by both petitioner and her counsel. Therefore, petitioner suffered no harm by not being present at the hearing. Moreover, it was properly determined by the Georgia Supreme court that had petitioner been present for the conferences, there is no reasonable probability that the outcome of the trial would have been different. *McCulley*, 275 Ga. at 476.

After a review of the record and the standards set forth in 28 U.S.C. § 2254(d), the undersigned finds that the petitioner is not entitled habeas relief on her ineffective assistance of counsel claims.

Accordingly, IT IS RECOMMENDED that the petition of SHIRLEY ANNE MCCULLEY for relief under provisions of 28 U.S.C. § 2254 be **DENIED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned, WITHIN TEN (10) DAYS after being served with a copy thereof.

SO RECOMMENDED, this 2nd day of NOVEMBER, 2005.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE